

**UNITED STATES DISTRICT COURT**

Northern District of Illinois

Eastern Division

**FILED**
JAN 0 6 2010  NF
Jan 6. 2010
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Kimberly Holt

Plaintiff

v.

Midland Credit MGMT Inc.

Defendant

Case No. 1:09-cv-5468
09cv5468

Judge Gettleman

## Motion To Withdraw and Appoint New Counsel

Back in June, I contacted Alexander Burke, of Burke Law Offices, LLC, about representing me on some cases. However, a little over a week later, I ultimately had to dismiss Mr. Burke because I wasn't confident in his ability to move forward on my cases. So, I retrieved my files from Mr. Burke and went on to seek representation elsewhere.

On or about August 21st 2009, another attorney, Mr. Curtis Warner, had agreed to represent me on at least one of my cases, however, less than a week or so later, I was notified by Mr. Warner that he would be unable to move forward on my cases because of personal issues. So, without my knowledge, Mr. Warner had referred my cases to another attorney that had an office in the same building, that attorney was Mr. Burke.

Upon being asked by Mr. Warner about taking my cases, Mr. Burke contacted me, personally, by email, declining to take me on as a client. At that time, I informed Mr. Burke that I didn't know Mr. Warner was going to refer my cases to him and if I had I would have told him not to do so because I had already dismissed him and would have taken my cases elsewhere.

Soon after that, I decided to look into filing the case pro se and ultimately went on to do so.

As the court is aware, about the middle of November of 2009, I was notified that Alexander Burke was appointed as my counsel. Soon thereafter, I contacted the court's deputy, George Schwemin, as to what were my options as far as getting another attorney appointed. I explained to Mr. Schwemin that because of past encounters that I have had with Mr. Burke, as described above, I was afraid that Mr. Burke, if he remained appointed, may purposely do things that may jeopardize my case.

1

Mr. Schwemin explained to me that I could either ask to have Mr. Burke withdrawn, or Mr. Burke could withdraw or I could wait and see what happened. He stated that because Mr. Burke had been appointed maybe things would be different. I decided to wait and see.

On or about the 20th of November, Mr. Burke contacted me via email to make me aware of his having been appointed to represent me in the case against Midland and asked if I had requested that he be withdrawn. I said I was waiting to see what he was going to do. We interacted briefly via email, about the case, and he requested that I forward copies of any documents that I had concerning the case to him and we made an appointment for November 30th to meet and discuss the case further.

During our meeting, of over two hours, Mr. Burke informed me that he wasn't obligated to represent me and really shouldn't have been appointed because he wasn't a member of the trial bar, but felt Judge Gettleman had appointed him personally based on their long standing friendship. So, he stated he would have to find out how the process was supposed to work if he was going to continue as appointed.

For the rest of the meeting, we went on to plan a case strategy. During our meeting, Mr. Burke also decided to contact opposing counsel, Ms. Delarmente, via phone, to notify her of our settlement demands, stating that he expected an answer from them by that Friday, December 4th, at noon, or he was going ahead with drafting the complaint and his fees would be going up. By the meeting's end, Mr. Burke stated he would be getting a contract to me by the end of the week.

On December 4th, Mr. Burke notified me that the defendant had rejected our demands and had presented a counter offer. He advised me not to take it, stating that we should move ahead as planned. He also informed me that he was still working on a contract. I emailed him to say that I would reject the defendant's counter offer and would wait to hear back from him as to the complaint, contract and any further developments from opposing counsel.

In less than three hours, the attorney-client relationship between Mr. Burke and I would take on a more adversarial tone because it would become clear of Mr. Burke's intent to make unilateral decisions on case strategy that were in direct contradiction to what I wanted as his client, what we had agreed on in our meeting and was clearly not in my best interest.

In emails, over the next few days, I reminded Mr. Burke that he was ethically bound to follow my goals as his client. I also went on to explain to Mr. Burke why I felt the decisions he was making about how to proceed with my case were not in my best interest. I reminded him of the hardships I endured in trying to get my case in court and I was not going to allow him to jeopardize it. I ended by telling Mr. Burke what I expected of him, as my attorney, and what steps I wanted him to take as my attorney and how I expected him to follow that.

Mr. Burke refused.

At this point, I thought, in the emails to follow, it would be best to let Mr. Burke know that I found his behavior, harassing and unbecoming of an officer of the court. I also explained to him that if his behavior continued and he was intent on making decisions against my wishes, I would seek reprimands, would file complaints against him with various agencies and I would seek to file suit against him.

2

I went on to state that I would appreciate it if he would just do his job, stop harassing me and focus on getting the complaint filed on time and representing me properly in settlement discussions instead of focusing his attention on antagonizing me.

At this point, I had still not received a contract, nor had I received a copy of the amended complaint. However, on December 14th, I received an email from Mr. Burke, responding to my concerns about his objectives for my case. This was, now, 10 days after he had promised to get documents to me.

The next time I would hear from Mr. Burke was December 30th at 10:57 a.m., two minutes after I emailed him inquiring if there had been any movement on my case since our last contact. I told him that I had noticed that the date to re-file was the next day and I hadn't seen any changes or had been notified of any changes by the court to the case. So, I was wondering if he had filed the new complaint already and it just hadn't been updated in the system yet, or if negotiations were still ongoing and the re-filing was being delayed. His response was he'd send me a draft later.

Upon checking my email the next day, I noticed that Mr. Burke had sent me a copy of the complaint and a contract a few hours after I had emailed him, asking for an update. In that email, he also inquired about facts of the case that we had already discussed and were, at this point, irrelevant even by his own admission. Below, I have added the last emails between Mr. Burke and myself on the day of December 31st, when the complaint should have been filed. Some parts of the emails I have had to redact due to the information being specific to our case strategy.

*Alex,*

*I am just getting your email and am currently not near a printer or fax. So, I would not be able to review, edit and get it back to you before the end of today. So, it is my hope that you have already filed and are simply giving me the documents for my review, since I was inquiring about any updates to the case. As you may recall, in our meeting on Monday, November 30th, I was told you would get documents to me for my review by the end of that week, if there were any.*

*As far as the complaint, we have been over all of the details and my concerns and what you were going to state in the complaint, so that should be ready to upload if you still haven't filed it. Also, if you were waiting on my feedback or for me to sign paperwork before filing it, you certainly would have not waited for me to ask for an update to give me paperwork. That looks very suspicious. So, since you didn't say I needed to get these documents to you immediately, I am going to assume that there's no need to be concerned.*

*Lastly, it has been awhile and I am wondering if there has been any movement, or comments, from Midland since the 15th, which is when I believe you last updated me on any offer they may have made at the time. Further, when I was in talks with their attorney she was calling me constantly, so this is why I am also inquiring about new developments.*

*Thanks,*

*-Kim*

3

*This is too much to go through today. I will file a motion for extension. I need you to review and sign the complaint before filing.*

*Alex Burke*


*Okay, so the games continue.*

*So, while you're filing an extension, be sure that you file a request for the both of us to go before the judge because the fact that you didn't email me prior about this and had no intention of giving me time to review, until I asked for an update. And you also just so happen to include an authorization that I must sign and get back to you says to me and anyone reading this that you are using filing this complaint as a way to hold me and my case hostage.*

*So, it is clearly time that the judge be made aware because it is time that sanctions are implemented.*

*I have never had this problem with any attorney. They get a complaint to you or not for your review and if you give the okay it is filed. Period. And they don't wait for me to ask either and always within a week or less of them taking your case. And as far as an authorization, you have been appointed. So, you must represent me as to what is in my best interest. Period.*

*The complaint is ready to go and has been ready to go for some time but you withheld it, and the authorization, purposely in what is, at first glance, looks like an attempt to extort, coerce and intimidate me into signing an authorization at the last minute which isn't in my best interest.*

*So file an extension and not the complaint, as I have asked you to do several times, and we have emailed back and forth enough times that you should have been getting the complaint to me earlier anyway, I am going before the judge and let him know of your unprofessional, unacceptable and illegal behavior. Then, explain to him why you chose to file an extension and you didn't file a complaint you have had over a month to do so. Further, from what I can see your complaint only fills in the blanks of what I had already given to the court, so why the need for a signature to verify what I have verified already.*

*So, choose your poison. The okay to file the complaint has been given, other than that get prepared to tell it to the judge. Did you get through that?*


*-Kim*


The next day, I received notice that Mr. Burke had indeed filed for an extension. In it, as the court is aware, Mr. Burke asserts that he was in a car accident and was unable to get the complaint to me. As the above emails demonstrate, and as I outlined prior in this motion, Mr. Burke never stated to me any of the facts that he asserts in his motion for an extension. As his client, I should have been notified of any changes that might affect my case.

4

I also found it curious that if Mr. Burke had a complaint ready that he emailed me within a few hours of my inquiring, then, either it was prepared before the accident and he should've gotten it to me, or his injuries weren't as bad as he outlines because he wouldn't have been able to draft a complaint and authorization in a few hours and get it to me.

If Mr. Burke were injured in an accident and this is the reason he wasn't able to get these documents to me prior, then why did he put himself through the pain and effort to draw up and send me such documents last minute? Mr. Burke could have just notified me of his needing to file an extension at the moment I inquired about the update. Further, when I asked for any updates in the case, this would have also been a good time to tell me that he had been a victim in a car accident.

Besides the issues outlined above, I also wondered, considering the tone our attorney-client relationship had taken, why didn't Mr. Burke request that he be withdrawn? Instead, he suggested that we meet to discuss the complaint and his contract the same day of notifying me he had filed an extension. This also made it clear to me that my suspicions about Mr. Burke's intention to jeopardize my case or use his being appointed, to represent me, as a tool to retaliate against me were correct.

Further, despite my having asked Mr. Burke, several times, as to the status of negotiations with the defendant, in the past couple of weeks, I have not received any. Whether there had been any movement or not, a client has the right to at least have their questions addressed.

I have detailed my reasons for asking for the appointment of new counsel, in this motion, to demonstrate that I have tried to work with Mr. Burke to get this case to a speedy and applicable solution and to illustrate the harassment and problems that I have endured in those attempts.

Further, whatever Mr. Burke's issues, or motives, it had become clear that it was time to go before the court, myself, and ask that Mr. Burke be sanctioned and removed from my case before he damaged it any further and to end the harassment. So, I contacted Mr. Schwemin, again, to get advice as to how to go about doing so. He suggested that I might file a motion to withdraw and appoint new counsel.

Therefore, for the reasons outlined above, I respectfully and regretfully ask that the court withdraw Mr. Burke as my counsel and appoint new counsel.

Kimberly Holt

Kimberly Holt

9352 S. Kimbark Avenue

Chicago, Illinois 60619

(773)374-2536

5